IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SCH CORP., *et al.*, ) | Bank. No. 09-10198 (BLS) |
| ) | (Jointly Administered) |
| Liquidating Debtors. ) | |
| ———————————— ) | |
| ) | |
| CFI CLASS ACTION CLAIMANTS, ) | |
| ) | |
| Appellants, ) | |
| ) | Civ. No. 12-1577-SLR |
| v. ) | |
| ) | |
| CARL SINGLEY, ) | |
| ) | |
| Appellee. ) | |

**MEMORANDUM ORDER**

At Wilmington this 8th day of July, 2013 having reviewed Carl Singley's ("Singley") motion to dismiss the appeal filed by CFI Class Action Claimants ("CFI"), and the papers filed in connection therewith;

IT IS ORDERED that said motion to dismiss (D.I. 9) is granted, for the reasons that follow:

1. **Background.** Singley is the disbursing agent, litigation designee, and responsible officer for SCH Corp., American Corrective Counseling Services, Inc. and ACCS Corp., the liquidating debtors (collectively, the "debtors").

2. Prior to the debtors' bankruptcy filings, class action litigations against the debtors occurred in California, Florida, Indiana, and Pennsylvania, alleging, among

other harms, violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (the "FDCPA") and certain similar state statutes. (*Id.* at ¶ 10)

3. On January 19, 2009 (the "Petition Date"), the debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). (*Id.* at ¶ 8) The plaintiffs in California ("Del Campo"), Florida, and Indiana were given the acronym of the "CFI Claimants" and were actively represented by counsel in the chapter 11 case. (*Id.* at ¶ 11)

4. On or about May 22, 2009, the debtors filed a proposed plan to sell its business to National Corrective Group, Inc. ("NCG"), an affiliate of the debtors' primary secured lender, Levine Leichtman Capital Partners III, L.P. ("LLCP"). (*Id.* at ¶¶ 12, 18, 22). This plan provided third-party releases from liability, in exchange for a total consideration of approximately $2.5 million. (*Id.* at ¶ 22) This plan was rejected by CFI, and the debtors abandoned the plan.

5. On August 5, 2009, the debtors proposed a new plan (the "amended plan"), which removed the third-party releases and included a $1 million payment to debtors paid in five $200,000 installments, one payment per year. (*Id.* at ¶ 24) However, NCG would be able to offset certain litigation costs up to $200,000 per year. (*Id.*)

6. With the support of CFI,[1] the amended plan was confirmed by a confirmation order from the Bankruptcy Court on November 2, 2009. (*Id.* at ¶¶ 25-26) The effective date was December 21, 2009. (*Id.*)

7. On January 4, 2010, Christina Smith and other plaintiffs initiated a new class action suit against LLCP, NCG, and others (the "Smith" action), alleging claims under the Fair Debt Collection Practices Act, RICO, and state law. (*Id.* at ¶ 27) Irv Acklesberg ("Acklesberg") and Paul Arons ("Arons"), counsel for CFI prior to and during the bankruptcy cases, along with other counsel, filed the complaint on behalf of the plaintiffs. (*Id.*)

8. On March 9, 2011, the United States District Court for the Northern District of California granted a motion that forced the withdrawal of Acklesberg and Arons, on the grounds that they had a disqualifying conflict of interest - costs accrued defending the Smith litigation reduced amounts recoverable under the amended plan. (*Id.* at ¶¶ 28-29)

9. After that disqualification, one or more defendants moved to disqualify plaintiff's counsel in the Del Campo litigation. On September 29, 2011, the United States District Court for the Northern District of California granted that motion. (*Id.* ¶ at 30)

---

[1] "On August 4, 2009, LLCP filed the Plan and Disclosure Statement and thereafter negotiated with the Class Representatives for the various prepetition litigations. The Class Representatives executed Plan Support Agreements and have voted in favor of the Plan consistent with such agreements." *In re SCH Corp., et al.*, Civ. No. 09-10198, D.I. 672 at 3 (Bankr. D. Del Sept. 14, 2012).

10. After disqualification, counsel for CFI asserted that the bankruptcy cases should be dismissed for lack of good faith. (*Id.* ¶ at 33)

11. On September 14, 2012, following a three-day evidentiary hearing on the motion to dismiss and Singley's motion to approve a compromise, the Bankruptcy Court issued an oral ruling denying CFI's motion to dismiss and granting Singley's motion. (*Id.* ¶ at 37)

12. **Standard of Review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002).

13. **Analysis.** Constitutional mootness requires that an appeal be dismissed when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895). An appeal "is not moot when a court can fashion 'some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party.'" *In re Nellson Nutraceutical, Inc.*, 2008 WL 4532514, at *2 (D. Del. Oct. 9, 2008) (quoting *In re Continental Airlines*, 91 F.3d 553, 558 (3d Cir. 1996)).

14. As the court could find error in the Bankruptcy Court's denial of CFI's motion to dismiss based on bad faith (including a possibility for sanctions against the debtors), at least some form of meaningful relief, albeit partial relief, could be provided. Therefore, this appeal is not constitutionally moot.

15. The equitable mootness doctrine should only apply when doing so will "[unscramble] complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 169 (3d Cir. 2012), as corrected (Oct. 25, 2012) (quoting *Nordhoff Investments, Inc. v. Zenith Electronics Corp.*, 258 F.3d 180, 185 (3d Cir. 2001)). In determining whether the doctrine applies, courts in the Third Circuit are to consider the following prudential factors:

> (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.

*In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996). Courts may extend this principle to liquidation plans. *See In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 587-88 (D. Del. 2009) (equitable mootness may apply in cases involving a liquidating plan); *In re Kainos Partners Holding Co., LLC.*, 2012 WL 6028927 (D. Del. Nov. 30, 2012) (dismissing an appeal of a bankruptcy order approving a settlement as moot).

16. The Bankruptcy Code defines "substantial consummation" as the:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). If this definition is satisfied, the court must then look to whether a successful appeal would unravel the plan. *See Philadelphia Newspapers, LLC*, 690 F.3d at 168; *In re Zenith Electronics Corp.*, 329 F.3d 338, 344-45 (3d Cir. 2003). Where a plan that has been substantially consummated can be "reversed without great difficulty and inequity," this factor does not weigh in favor of equitable mootness. *See New Century*, 407 B.R. at 588.

17. The amended plan at bar has been substantially consummated.[2] Debtors' assets have been transferred to NCG (D.I. 9 at ¶ 19) and some professionals have

---

[2] Singley argues the substantial consummation element is satisfied because the amended plan provides "[o]n the effective date, the [p]lan shall be deemed substantially consumated . . . ," and the amended plan is not subject to further revocation. (D.I. 9 at ¶ 51) This argument meets neither of the requirements for substantial consummation under *Philadelphia Newspaper. See Philadelphia Newspaper*, 690 F.3d at 168-69. First, simply stating in the plan that it is "substantially consummated" does not meet the definition of substantial consummation as defined in 11 U.S.C. § 1101(2). Second, these statements do not indicate how "allowing the appeal to move forward will undermine the plan." *See id.*

been paid under the amended plan (*id.* at ¶ 52). However, there have been no distributions to any unsecured claimants.³ (D.I. 19 at ¶ 18) Arguably, the only aspects of plan implementation that require reversal are the limited number of distributions that have occurred. Therefore, the record does not indicate that reversing the amended plan would result in "great difficulty or inequity." The first factor, therefore, weighs against dismissal.

18. All other prudential factors weigh in favor of dismissal. No stay has been sought either during confirmation of the amended plan or in the three years since the liquidation plan was confirmed. (D.I. 9 at ¶¶ 25, 51) The relief requested would affect third parties not presently before the court, including both Pennsylvania class claimants who have received a final and non-appealable judgment allowing a $2.55 million proof of claim under the amended plan, and the professionals who have had funds distributed to them under the amended plan. (D.I. 9 at 52; *In re SCH Corp.*, Civ. No. 09-10198, D.I. 715) The relief requested would rescind the amended plan in its entirety, reducing the debtors' ability to liquidate. Further, public policy affords finality to bankruptcy judgments. *See New Century*, 407 B.R. at 590.

19. Appellate Rule 38 provides for sanctions "[i]f a court of appeals shall determine that an appeal is frivolous." Fed. R. App. P. 38; *see also Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) ("An appeal is frivolous if it is wholly without merit."). Here, while prudential factors weighed against CFI's motion, the court does

---

³ While no distributions have been made to unsecured claimants, the plan incorporates a waterfall distribution for a substantial claim pool. After reviewing the relevant documents, the court concurs with the Bankruptcy Court that "the prospects for . . . a meaningful distribution to unsecured creditors . . . do not look good." *In re SCH Corp.*, Civ. No. 09-10198, D.I. 932 at 11.

7

not find the case was without merit. Therefore, the court declines to award sanctions in this instance.

20. **Conclusion.** For the reasons explained, Singley's motion to dismiss is granted, as CFI's appeal is equitably moot.

*[signature]*
United States District Judge